UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI

DAVID LAWRENCE MAYES,
        PLAINTIFF

V.                                              No.

RENEE TODARC, et al.,
        DEFENDANTS.

---

PLAINTIFF'S VERIFIED COMPLAINT
UNDER THE CIVIL RIGHTS ACT OF 42 U.S.C. 1983
SEEKING INJUNCTIVE RELIEF AND DAMAGES.
WITH JURY DEMAND

## I. INTRODUCTION:

1. THIS IS A CIVIL RIGHTS ACTION PURSUANT TO 42 USC 1983 FILED BY DAVID LAWRENCE MAYES, A STATE PRISONER, ALLEGING THE DELIBERATE INDIFFERENCE OF THE DEFENDANTS TOWARD HIS SERIOUS MEDICAL NEEDS IN VIOLATION OF THE EIGHTH AMENDMENT. THE PLAINTIFF IS SEEKING INJUNCTIVE RELIEF AS WELL AS DAMAGES, AND A JURY TRIAL.

## II. JURISDICTION:

2. JURISDICTION OF THE COURT IS INVOKED PURSUANT TO 28 USC 1331 IN THAT THIS IS A CIVIL RIGHTS ACTION ARISING UNDER THE CONSTITUTION OF THE UNITED STATES.

1

3. Jurisdiction of the court is invoked pursuant to 28 USC 1343(a)(3), in that this action seeks to redress the deprivation, under the color of state law, of rights secured by acts of Congress providing for equal rights of persons within the jurisdiction of the United States.

4. The venue of the court is secured in that, in all times relevant of the events described herein, occurred within the jurisdictional boundaries of this court.

## III. PARTIES:

5. The Plaintiff, David Mayes, at all times set forth herein, is a state prisoner, currently resides at the South Central Correctional Center, located at 255 W. HWY 32, 65542.

6. Defendant, Corizon Health, is a private contractor who is under contract with the Missouri Department of Corrections (MDOC) to provide medical care and services to offenders within the "MDOC", including David Lawrence Mayes.

7. Defendant, Renee-Toparc, is employed by Corizon Health as the on site Health Services Administrator who is responsible for the delivery of contract services, at the South Central Correctional Center.

8. Defendant, Ashok Chada, is a Corizon employee, who serves as the current Medical Director, and the on site medical physician who provides medical care and services to offenders within the South Central Correctional Center, including David Lawrence Mayes.

9. Defendant, Benjamin Gaddy, was a on site medical physician during the events described herein who

provided medical treatment and services at the South Central Correctional Center, including David Mayes.

10. Defendant, Jeff Norman, is the Warden of the South Central Correctional Center and is the highest ranking member at the worksite to which all medical concerns are reported.

11. Defendant Jewel Cofield, is the Director of Operations, Constituent Services, located at 2729 Plaza Dr., P.O. Box 236, Jefferson City MO, 65102, whose responsibility is to recieve, investigate, and to respond to offender grievance appeals, including, David Lawrence Mayes.

12. Defendant, Dr. Thomas Bredeman, is a D.O. Associate Regional Medical Director, whose duties include the investigation, and response to offender grievance appeals, including, David Lawrence Mayes,

13. Defendant, Dr. Dechetto, is a Regional Assistant Medical Director, whose duties include the oversight of medical referrals concerning offenders within the MDOC. including David Lawrence Mayes.

14. All Defendants are being sued in their individual and official capacities.

15. At all relevant times, the Plaintiff is informed and believes, and herein asserts that the Defendants were and are acting under the color of state law.

## IV EXHAUSTION OF STATE REMEDIES

(SCCC 17-1591)

16. ON NOV. 15, 2017 THE PLAINTIFF FILED THIS IRR IN REGARDS TO RENEE TOOARE, A DEFENDANT HEREIN, HAD DENIED THE PLAINTIFF MEDICAL CARE AFTER GOING TO NURSE SICK CALL.

17. PLAINTIFFS GRIEVANCE APPEAL WAS DENIED AS BEING FILED OVER THE SEVEN DAY TIMEFRAME PER MODOC POLICY.

18. YET THE MERITS WERE ADDRESSED BY STATING THAT THE PLAINTIFF'S COMPLAINT WOULD BE LOOKED INTO AND THAT APPROPRIATE ACTION WOULD BE TAKEN BY THE SITE MEDICAL DEPARTMENT.

19. THUS, AS ADDRESSED BY HAMMETT v. COFIELD, 681 F.3d 945, 8TH CIR. AN EXHAUSTION REQUIREMENT IS SATISFIED IF PRISON OFFICIALS DECIDE A PROCEDURALLY FLAWED GRIEVANCE IS DECIDED ON THE MERITS.

(SCCC 17-1748)

20. ON DEC. 22, 2017 THE PLAINTIFF BEGAN THE GRIEVANCE PROCESS BY FILING HIS INFORMAL RESOLUTION REQUEST SEEKING A REFERRAL TO A SPECIALIST FOR HIS CHRONIC CONDITION.

21. THE GRIEVANCE APPEAL WAS DENIED BY STATING THAT A REFERRAL WAS NOT MEDICALLY INDICATED AT THIS TIME.

(SCCC-18-54)

22. ON JAN. 16, 2018 THE PLAINTIFF FILED HIS IRR TO

complaint about a constant and severe rash that he had been experiencing since July of 2017.

23. The plaintiff requested that they figure out what caused it and to address it.

24. The grievance appeal was denied though it held that a referral was pending, yet was later denied.

(SCCC 18-173)

25. The plaintiff filed his "emergency" IRR after being denied treatment because of a severe allergic reaction he experienced after medical requested that the plaintiff recieve new clothing.

26. Grievance appeal was denied in part "I had requested the clothing exchange and therefore it addressed my health concerns."

## V. PREVIOUS CIVIL ACTIONS:

27. THE PLAINTIFF HAS A CIVIL RIGHTS ACTION PENDING IN THIS COURT IN NO. 6:17-3276-CV-S-MDH-P.

28. IN THAT ACTION THE PLAINTIFF ASSERTS THE DELIBERATE INDIFFERENCE OF THE DEFENDANTS TO HIS SERIOUS MEDICAL NEEDS BY FORCING HIM TO RECIEVE A TREATMENT KNOWING THAT HE WAS ALLERGIC TO IT AS WELL AS NOT PROVIDING HIM WITH SOAP.

29. THIS ACTION FOLLOWS TWO SKIN BYOPSIS THAT WERE DONE DURING THE EVENTS DESCRIBED ABOVE BUT ADDRESSES A SERIES OF EVENTS THAT HAS OCCURED SINCE THE PLAINTIFF FILED HIS PREVIOUS ACTION WHICH WAS FILED ON AUG. 17, 2017.

## VI. STATEMENT OF CLAIM:

30. PRIOR TO THE EVENTS DESCRIBED HEREIN, PLEASE NOTE THAT I HAD ALREADY BEEN DIAGNOSED WITH SPONGIOCTIC DERMATITIS, WHICH BASICALLY MEANS THAT I HAVE SOME ALLERGIES.

31. TO DATE, THOSE ALLERGIES HAVE NOT BEEN IDENTIFIED.

32. IN EARLY NOV. 2017, I CAME INTO CONTACT WITH SOMETHING THAT CAUSED A SEVERE EXASBERATION OF MY CHRONIC RASH.

33. MOST NOTABLY, IT SEEMED TO INVOLVE MY CLOTHES SINCE I HAD TO WEAR GARBAGE BAGS UNDER MY CLOTHES IN AN EFFORT TO KEEP THEM OF MY SKIN.

34. ON NOV. 13, 2017 I WENT TO NURSE SICK CALL SEEKING HELP.

35. AFTER REMOVING THE GARBAGE BAG THAT I WAS WEARING

to show Nurse Zork my rash she informed me that she would refer me ASAP.

36. That afternoon I once again spoke with Ms. Zork. She informed me that Renee Tudare, the Health Services Administrator, told her that I had a chronic condition, and that I would not be seen by a doctor until the current treatment that I was given expired.

37. The only treatment I was on was Nick's ointment.

38. This rash that I was having was one of the most severe that I had ever endured. And I do not know what I would have done if it wasn't for staff giving me garbage bags to wear.

39. On Dec. 4, 2017, Dr. Chada finally saw me.

40. At that point I was still covered all over my body in a rash, and I was still wearing garbage bags under my clothes.

41. Dr. Chada thought it was a good idea.

42. We had a long discussion about the problems I continued to have with soaps and detergents.

43. We also discussed the reasons why we always just attempt to treat the symptoms instead of trying to figure out what I am allergic to.

44. All I got was tar shampoo, which is for seborrheic dermatitis and psoriasis.

45. I have spongiotic dermatitis.

46. Which I later cancelled since it burned my rash when I used it.

47. On Dec 28, 2017 I had a long discussion with

Kathy Barton, the Director of Nursing, about the problems I was having with my clothes and soaps.

48. I was still wearing the garbage bags, and we further discussed why they would not find out what I was allergic to.

49. Then around Jan 14, 2018 I declared a medical emergency because of a really bad outbreak to my neck and shoulders. I was given a 4mg tab of Benadryl.

50. A couple of days later I again spoke with Kathy Barton. She noted a bad rash to my shoulders and back that looked like hives.

51. We also had a lengthy discussion about my clothes being the cause of my rash problems. Either it was because they had some contamination that was the cause of the allergic reaction, or it was the fabric.

52. She agreed to see if I could exchange my clothes.

53. On Jan. 18, 2018 Dr Chada noted a rash all over the plaintiffs body that was described as maculopapular erythematous eruptions.

54. He then ordered a 4mg tab of dexamethasone, a 80 mg injection of methylpred acetate, a prednisone dose pack.

55. Which was in response to the plaintiffs self declared medical emergency the day before.

56. Then on Jan 25, 2018 clothing issue exchanged all of the plaintiffs clothing with all new, and unwashed items.

57. By Tues. the 30th of Jan 2018 the plaintiff was at nurse sick call, as well as the 31st.

58. By the evening of the 31st things were getting worse so the plaintiff self declared, with no referral.

59. So I decided to file an emergency IRR, because I was in terrible pain all because of the exchange of clothing.

60. Per policy all emergency IRR's go directly to the CJ site (CAO) who determines if it should be considered as emergency after consultation with central office personnel.

61. The CAO is Jeff Norman, who I assume denied it as emergent since no one saw me about it until March the 7th. Even then no one will tell me who denied me the treatment I needed.

62. On Feb 5, 2018 Dr. Gaddy noted a rash that covered most of my body. In fact, any skin that touched my clothing.

63. He further noted some punctate lesions that he decided to do a skin biopsy on.

64. It seems that all along that I had two different rashes going on.

65. On Feb 19, 2018 Dr. Gaddy read the findings to me and said that it was most likely a eczematous process. He also told me to avoid soaps and detergents.

66. So that is what I do.

67. Contrary to what people believes I'm sick and tired of all this pain. In fact, I'm scared to death of going through anymore of it.

68. So I have no choice but to avoid it all.

69. Soaps, or in fact, no chemicals of any sort gets

wear my clothing or bedding.

70. I never wear underware or t-shirts because I can never wash them.
71. My clothes and bedding only gets rinsed in plain water.
72. Though I have no choice but to wash my socks, except for the fact that my feet is always broke out.
73. And I rarely use soap to bathe.
74. Then on March 9, 2018 Dr. Chada finally referred me.
75. He noted that I had recurrent rashes with eruptions and bleeding for past two years.
76. That he had tried all kinds of antihistamines, as well as steroids, scabie treatment, which all failed.
77. That he needed a definitive dermalogical assessment to properly advise him what to do.
78. The referral was denied.
79. After reading the refusal I noticed that it quoted the Feb. 5th Byopsy resulted that quoted it as most likely an eczematous process.
80. And that the review only took into account the last 4 or 5 months of medical records.
81. So I wrote Dr. Decketo and tried to explain the full history of my issues as well as the previous byopsy results that he had ordered. Hoping to get another result.
82. All to no avail.
83. And defendants Cofield, Bredeman, have always knew all the intimate facts of this case since they are the very ones who continue to deny the plaintiff any help by denying each and every grievance appeal.

# VII CAUSES OF ACTION:

## A

83. Renee Tudaro exhibited deliberate indifference to the plaintiff's serious medical needs by denying him the opportunity to be seen and assessed by a medical physician.

84. As a result thereof the plaintiff suffered irreparable pain and injury.

## B

84. Defendant, Jeff Norman, exhibited deliberate indifference to the plaintiffs serious medical needs by denying his emergency IRR requesting to be assessed and seen by a medical physician.

85. As a result thereof, the plaintiff suffered serious physical pain and injury.

## C.

86. The remaining defendants exhibited deliberate indifference to the plaintiffs serious medical needs by not determining what the allergen(s) are that pose a substantial risk of serious harm to the plaintiff.

87. Despite the defendants knowledge of plaintiffs serious medical needs they exhibit deliberate indifference by not referring the plaintiff to a specialist who can definitively determine the allergens that continue to pose a substantial risk of serious harm to the plaintiff.

88. As a result thereof, the plaintiff has suffered and continues to suffer physical pain and injury.

## VIII RELIEF REQUESTED:

WHEREFORE, THE PLAINTIFF REQUESTS THAT THIS COURT WILL GRANT THE FOLLOWING RELIEF.

A. DECLARE THAT THE DEFENDANT, RENEE TODARO, VIOLATED THE 8TH AMENDMENT BY EXHIBITING DELIBERATE INDIFFERENCE TO THE PLAINTIFFS SERIOUS MEDICAL NEEDS WHEN SHE REFUSED TO LET THE PLAINTIFF SEE A MEDICAL PHYSICIAN.

B. DECLARE THAT THE DEFENDANT, JEFF NORMAN, VIOLATED THE EIGHTH AMENDMENT BY HIS DELIBERATE INDIFFERENCE WHEN HE DENIED THE PLAINTIFF THE MEDICAL CARE HE NEEDED.

C. DECLARE THAT ALL OTHER DEFENDANT VIOLATED THE EIGHTH AMENDMENT BY THEIR DELIBERATE INDIFFERENCE, DESPITE THEIR KNOWLEDGE OF A SUBSTANTIAL RISK OF SERIOUS PHYSICAL HARM, BY THEIR REPEATED FAILURE TO DETERMINE "DEFINITIVELY" THE ALLERGEN(S) THAT ARE CAUSING THE PLAINTIFF CONTINUED PHYSICAL PAIN AND INJURY.

D. ISSUE AN INJUNCTION REQUIRING THE DEFENDANTS TO SEND THE PLAINTIFF TO A SPECIALIST.

E. AWARD COMPENSATORY DAMAGES FOR PLAINTIFFS PHYSICAL AND EMOTIONAL INJURIES, AND PUNITIVE DAMAGES AGAINST EACH DEFENDANT, AND;

F. GRANT THE PLAINTIFF SUCH OTHER RELIEF AS IT MAY APPEAR IS PROPER AND JUST.

THIS, THE 3RD DAY OF JUNE, 2018

DM

DAVID MAYES
355 W. HWY 32

12

DECLARATION:

Pursuant to 28 USC 1746, I declare (or certify, verify or state) under penalty of perjury that the foregoing is true and correct.

*(signed)* DM

DAVID LAWRENCE MAMES